UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMES RIVER INSURANCE CO. | CIVIL ACTION NO. 11-763 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TRIAD AFFILIATES, INC., ET AL | MAGISTRATE JUDGE MARK HORNSBY |

## MEMORANDUM RULING

The Plaintiff, James River Insurance Co. ("James River"), filed suit against Defendants Triad Affiliates, Inc. ("Triad"), Underground Solutions, Inc., Cantex, Inc., and other defendants who have since been dismissed from this lawsuit. James River asserts that the Defendants are liable to it due to environmental remediation for which it had to pay on behalf of its insured, Heckmann Water Resource Corporation ("Heckmann"). Currently before the Court is Triad's motion for summary judgment, seeking a determination by the Court that it is not liable to James River for any damages, nor does it have a duty to indemnify Underground Solutions. [Record Document 73]. Cantex, Underground Solutions, and James River each oppose Triad's motion for summary judgment. [Record Documents 78, 81, & 82, respectively]. After a thorough review of the record, the Court concludes that there are genuine issues of material fact which

preclude the grant of summary judgment. Accordingly, Triad's motion for summary judgment [Record Document 73] shall be DENIED.

## FACTUAL BACKGROUND

In 2009, Heckmann began work on the construction of a pipeline designed to transport salt water brine from the Exco production fields in western Louisiana to a depository in Joaquin, Texas. Salt water brine is a hazardous fluid that is produced as a by-product during oil and gas production. Due to salt water brine's corrosive properties, Heckmann constructed the pipeline with PVC pipe. The PVC pipe was constructed in forty-foot segments, which were transported to the job site and fused together in the field. Heckmann hired Underground Solutions to fabricate, deliver, and fuse the PVC pipe for the pipeline project. The task of actually moving and burying the fused pipe was handled by different construction contractors, none of whom are identified in the pleadings.

A short time into the project, Underground Solutions hired Triad and Cantex to assist in the fusion work. Triad used several fusion technicians on the project, while Cantex used only one, Glenn Trammell ("Trammell"). After Cantex ended its work on the project, Underground Solutions and Triad remained on site and continued the fusion work necessary to complete the

project. In December of 2009, Heckmann dismissed Underground Solutions, leaving Triad as the only fusion company. Triad continued to report to and provide fusion logs to Underground Solutions. Construction and fusion of the pipeline was mostly completed by March of 2010.

On April 5, 2010, Heckmann learned that salt water brine had leaked from the pipeline onto nearby property. Heckmann discovered the six-inch length of pipeline from which the leak originated and excavated that section. The leak was evidently caused by a separation of a fused joint. James River, who insured Heckmann, remediated the affected property.

## LAW AND ANALYSIS

I. <u>Motion for Summary Judgment.</u>

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505,

2510 (1986).  A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial."  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).  While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075,  Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).  However, a factual

controversy only exists when "both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

II.     Triad's Motion for Summary Judgment.

Triad's motion for summary judgment seeks summary judgment dismissing it from this suit, alleging that the undisputed facts show that it did not perform any fusions on this six-inch piece of pipeline in question; rather, Cantex was responsible for the fusion of that section. Triad submits that the fusion log shows that Trammell, who worked for Cantex, fused the six-inch pipe on October 31, 2009. Triad further argues that Trammell himself admits that he fused the section of pipe that leaked on April 5, 2010. Finally, Triad relies on the affidavit of Terry Norris ("Norris"), former Triad manager, who asserts that "neither he nor any other employee of Triad Affiliates, Inc., performed fusions"

on this leaky section of pipe on October 31, 2009 or any time after that date. Record Document 73-7, p. 1. Triad argues that because James River has no evidence that it was in any way responsible for the leak, summary judgment should be granted in Triad's favor.

In Cantex's opposition to Triad's motion for summary judgment, it concedes that it "originally fused the joint in question where the leak occurred on October 31, 2009. This joint initially passed a leak test (i.e., a complete fusion)." Record Document 78, p. 1. However, Cantex points out that once its fusion work was completed on that section of pipe, the pipe was pulled approximately 1,700 feet by a backhoe (without any leakage problems) and then later towed into a trench after Cantex left the job site. Thus, when Cantex left the site, the pipe had not yet been placed in the ground. Cantex submits that there is substantial evidence that Trammell's joint was refused after Cantex was gone from the site. In fact, in Trammell's deposition, he denies that the affected joint was his, as his personal markings were notably absent from the joint. That is, if the affected joint had been fused by Trammell, he would have expected to see his "initials, date, log number on either side of it in permanent marker . . . . It's not in any of the pictures I've seen." Record Document 78-2, pp. 4-5. Trammell further speculated,

> since my written joint number, project number, date and signature were not there, it is very possible that that joint was destroyed, damaged, hurt and redone after this pipe was fused and laid in the ground by me.
>
> . . .
>
> You could cut this joint out, re-fuse that pipe together because it was damaged in the process of putting it in the ground or whatever. And where re-fuse it and put it in there and it would then reflect it's still my joint. But without my name and signature and date present, that gives me reasonable doubt that it's mine.

Id. at pp. 6-7. Based upon this testimony, Cantex urges the Court to deny summary judgment, as there is a genuine issue of material fact as to which party is responsible for re-fusing the joint. It claims it cannot be responsible for the re-fusing since it had already departed from the job site.

James River agrees with Cantex's arguments, adding that it is not uncommon to remove a damaged section of pipe and re-fuse two segments together. James River further argues that because Cantex was not present to re-fuse the pipe, it must have been done either by Underground Solutions or Triad. Also, according to James River, the deposition of David Silvernail, from Underground Solutions, establishes that Triad did not regularly furnish fusion logs to Underground Solutions after it took over the contract. Thus, James River asserts that Triad is attempting to rely on its own poor record keeping as a means of winning its summary judgment motion.

Based on the foregoing, the Court finds there are genuine issues of material fact as to whether the joint was re-fused, and if so, who was responsible for re-fusing it. Accordingly, summary judgment is not appropriate, and Triad's motion for summary judgment [Record Document 73] is hereby **DENIED**.

THUS DONE AND SIGNED on this 11th day of March, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE